JOURNAL ENTRY and OPINION
Appellant, the State of Ohio, Department of Commerce, Division of Financial Institutions, appeals from the trial court order that denied its motion to quash a subpoena issued to appellant by appellee law firm Cavitch, Familo, Durkin Frutkin Co., L.P.A.
Appellant argues the trial court order was improper on the basis the subject matter requested in the subpoena is protected by statutory privilege. Appellee law firm has filed a motion to dismiss this appeal, contending the trial court's order does not meet the requirements of R.C. 2505.02 and Civ.R. 54(B).
Although this court concludes it has jurisdiction to consider appellant's appeal on its merits, it further concludes appellant's claim of privilege is inappropriately broad. Therefore, the trial court's order is affirmed.
This appeal results from an action filed in the trial court on December 16, 1999.[1] The plaintiff, Vincent J. Conforte, alleged in his amended complaint that the defendants, inter alia, David A. LaSalla, appellee law firm, and two attorneys who worked for appellee law firm (collectively herein referred to simply as appellee), had, with the aid of Conforte's money and mortgage broker's license, created a mortgage brokerage business named Diamond Financial Group. In the paragraphs relevant to this appeal, Conforte alleged the procedure LaSalla and the law firm had utilized with respect to Conforte's mortgage broker's license was improper and that they had committed fraud upon him in relation to this procedure to use his license. In pertinent part, Conforte alleged in his amended complaint as follows:
 29. * * * [T]he statements by LASALLA that the plan devised by CAVITCH and DIPALMA as an employee of CAVITCH, to use CONFORTE's mortgage brokerage license [was proper and legal], was (sic) material to CONFORTE's decision to not only obtain a mortgage brokerage license, but to hire CAVITCH to incorporate Diamond Financial Group, Inc. and, for CONFORTE to become a 50% shareholder in Diamond Financial Group, Inc.
 30. Likewise, CAVITCH, and DIPALMA, jointly and severally, made similar false statements to CONFORTE about the legality and propriety of the procedure to use his mortgage brokerage license, the same as LASALLA did as is herein above alleged.
 31. The statements of CAVITCH, and DIPALMA, jointly and severally, regarding the procedure to use CONFORTE's mortgage broker license, was (sic) false when made, and these Defendant's (sic) had actual knowledge of the falsity of their statements.
 32. CAVITCH's, and DIPALMA's, statements, jointly and severally, were made with knowledge of the falsity of the statements, with the intent that CONFORTE rely on the truth of the statements, and CONFORTE justifiably did rely on those statements.
 33. In furtherance of this fraudulent scheme, to convince CONFORTE that his mortgage brokerage license could be used by LASALLA at Diamond Financial Group, Inc., DAVID A. LASALLA and the Defendant JULIE FRANKLIN illegally forged and illegally notarized the signature of VINCENT J. CONFORTE on certain material documents that were required to be sent to the State of Ohio, in order to maintain VINCE CONFORTE's mortgage brokerage license.
(Emphasis added.)
Appellee's answer was a general denial of the foregoing allegations.
Eventually, during the course of the proceedings below, appellee sent a subpoena duces tecum to appellant. Appellee directed the subpoena to staff attorney Glen Littlejohn, demanding his presence at a deposition and commanding him to bring the following:
 COPIES OF APPLICATIONS FOR MORTGAGE BROKER LICENSES/CERTIFICATES OF REGISTRATION FOR VINCENT J. CONFORTE, DAVID A. LASALLA, DIAMOND FINANCIAL GROUP, DIAMOND FINANCIAL GROUP, INC., CONFORTE ENTERPRISES AND AG FINANCIAL, INC.
 COPIES OF ANY FINDINGS OF, INFORMATION GATHERED DURING OR ANY REPORT OF ANY INVESTIGATION OF ANY OF THE ABOVE PERFORMED IN ASSOCIATION WITH HIS/ITS APPLICATION FOR LICENSURE.
 COPIES OF ANY RENEWAL APPLICATIONS FILED BY ANY OF THESE INDIVIDUALS/ENTITIES.
 COPIES OF ANY AND ALL REPORTS OF INVESTIGATION CONDUCTED REGARDING ANY OF THESE INDIVIDUALS OR ENTITIES RELATIVE TO THE MORTGAGE BROKER'S LICENSE OR ACTION TAKEN AS A LICENSE HOLDER.
Appellant notified appellee it would not cooperate, then filed in the trial court a motion to quash the subpoena. Appellant argued the material sought by appellee was protected by a statutory privilege that guaranteed its confidentiality.
Appellee filed a brief in opposition to appellant's motion. Appellee suggested that in view of the pertinent allegations of the amended complaint,
 * * * all documents submitted to the State of Ohio with respect to obtaining and maintaining plaintiff's mortgage brokers (sic) license, including all alleged forged documents, are central to plaintiff's claim.
Appellee thus asserted that, by extension, the documents also were vital to its defense against plaintiff's claim. Appellee argued appellant's assertion of immunity was overbroad,[2] the documents appellee now sought were public record, and the documents now sought potentially contained false information which ought not to be protected.
Appellant thereafter filed a reply, contending the statute pursuant to which the documents enjoyed the blanket privilege of confidentiality was unambiguous.
Subsequently, the trial court issued an order denying appellant's motion to quash appellee's subpoena. Appellant was ordered to produce the requested mortgage broker's application (sic), any renewal documents, and all other requested records that do not relate to any investigation conducted by [appellant.] (Emphasis added.)
Appellant has filed its notice of appeal from the foregoing order. This court, however, initially must address appellee's motion to dismiss appellant's appeal. Appellee argues that pursuant to R.C. 2505.02 and Civ.R. 54(B), no final order exists and, therefore, this court lacks jurisdiction to consider appellant's appeal. Appellee's argument is rejected.
It first must be noted appellee supports its argument with legal authority that predates the current version of R.C. 2505.02. That statute, as amended effective July 22, 1998, now reads in pertinent part as follows:
§ 2505.02 Final order.
(A) As used in this section:
 (1) Substantial right means a right that the United States Constitution, the Ohio Constitution, a statute, the common law, or a rule of procedure entitles a person to enforce or protect. * * * (3) Provisional remedy means a proceeding ancillary to an action, including, but not limited to, a proceeding for a preliminary injunction, attachment, discovery of privileged matter, or suppression of evidence.
 (B) An order is a final order that may be reviewed, affirmed, modified, or reversed, with or without retrial, when it is one of the following:
* * *
 (4) An order that grants or denies a provisional remedy and to which both of the following apply:
 (a) The order in effect determines the action with respect to the provisional remedy and prevents a judgment in the action in favor of the appealing party with respect to the provisional remedy.
 (b) The appealing party would not be afforded a meaningful or effective remedy by an appeal following final judgment as to all proceedings, issues, claims, and parties in the action.
* * *
 (D) This section applies to and governs any action, including an appeal, that is pending in any court on the effective date of this amendment and all claims filed or actions commenced on or after the effective date of this amendment, notwithstanding any provision of [either] any prior statute or rule of law of this state.
(Emphasis added.)
In Bishop v. Dresser Indus. (1999), 134 Ohio App.3d 321 at 324, the court provided the following definition to supplement the provisions of R.C. 2505.02(A)(3):
 An ancillary proceeding is one that is attendant upon or aids another proceeding. See Sorg v. Montgomery Ward Co., Inc. (Dec. 17, 1998), Erie App. No. E-98-057, unreported, 1998 WL 904945.
(Emphasis added.)
With that in mind, the finality of the trial court's order must be reviewed without reference to Civ.R. 54(B) since that sub-section applies only to the underlying proceeding. Civ.R. 54(A); cf., Hall v. Cleveland State Univ. (1998), 129 Ohio App.3d 767 at 769.
The facts of this case demonstrate this appeal falls within the purview of R.C. 2505.02(A)(3) and (B)(4). Radovanic v. Cossler (2000),140 Ohio App.3d 208. Appellant, a nonparty to the underlying proceeding, sought, during the discovery process, a decision from the trial court regarding a statutory claim of privilege. The confidentiality privilege is a legal right that is enforced and protected by law. State v. Coffman (2001), 91 Ohio St.3d 125, 127. The trial court's denial of appellant's motion to quash had the effect of determining the ancillary action. Fischer Brewing Co. v. Flax (2000), 138 Ohio App.3d 92 at 95-96. Moreover, appellant would be denied a meaningful remedy should it be required, after forced disclosure, to wait until the ongoing underlying proceeding finally was resolved. Lampe v. Ford Motor Co. (Jan. 19, 2000), Summit App. No. 19388, unreported.
Furthermore, the provisions of R.C. 2505.02, as amended in 1998, clearly have superceded the decision of the Ohio Supreme Court in Walters v. The Enrichment Center of Wishing Well, Inc. (1997), 78 Ohio St.3d 118. Myers v. Basobas (1998), 129 Ohio App.3d 692.
This court, therefore, concludes it has jurisdiction to consider appellant's appeal. Appellant's sole assignment of error states:
 THE TRIAL COURT ERRED WHEN IT REFUSED TO QUASH THE SUBPOENA OF APPELLEES SINCE THE SUBPOENA SOUGHT STATUTORILY PRIVILEGED DOCUMENTS.
Appellant asserts the trial court's action was improper pursuant to the privilege of confidentiality contained in R.C. 1322.06(C). Appellant contends the clear language of that sub-section forbids disclosure of the requested material. This court disagrees.
In order to place the relevant provision of R.C. 1322.06 in context, other statutory sections in that chapter must be considered. State v. Cravens (1988), 42 Ohio App.3d 69, headnote 1. Thus, R.C. 1322.02
states:
 § 1322.02 Certificate of registration required to act as mortgage broker.
 No person, on the person's own behalf or on behalf of any other person, shall act as a mortgage broker without first having obtained a certificate of registration from the superintendent of financial institutions for the person's main office and for every other office to be maintained by the person for the transaction of business as a mortgage broker in this state.
(Emphasis added.)
R.C. 1322.03 sets forth the necessary information to be contained in an application for such a certificate, stating in relevant part:
 § 1322.03 Application for certificate; fee; investigation; disposition of receipts.
 (A) An application for a certificate of registration as a mortgage broker shall be in writing, under oath, and in the form prescribed by the superintendent of financial institutions.The application shall be accompanied by an application fee of three hundred fifty dollars for each location of an office to be maintained by the applicant and shall provide all of the following:
* * *
(Emphasis added.)
R.C. 1322.06, the statute upon which appellant relies as exempting from discovery the materials requested by appellee, states:
§ 1322.06 Keeping and examination of records.
 (A) As often as the superintendent of financial institutions considers it necessary, the superintendent may examine the registrant's records pertaining to business transacted pursuant to sections 1322.01 to 1322.12 of the Revised Code.
 (B) A registrant shall maintain records pertaining to business transacted pursuant to sections 1322.01 to 1322.12 of the Revised Code for two years or more after the final entry on such records. No registrant shall fail to comply with this division.
 (C) All information obtained by the superintendent or the superintendent's deputies, examiners, assistants, agents, or clerks by reason of their official position, including information obtained by such persons in the course of examining a registrant or investigating an applicant for a certificate of registration, is privileged and confidential. All such information shall remain privileged and confidential for all purposes except when it is necessary for the superintendent and the superintendent's deputies, examiners, assistants, agents, or clerks to take official action regarding the affairs of the registrant or in connection with criminal proceedings.
(Emphasis added.)
Finally, R.C. 1322.07(A) cautions:
§ 1322.07 Prohibitions.
 No registrant or applicant for a certificate of registration under sections 1322.01 to 1322.12 of the Revised Code shall do any of the following:
 (A) Obtain a certificate of registration through any false or fraudulent representation or make any substantial misrepresentation in any registration application.
* * *
(Emphasis added.)
The words that are used in an enactment serve as guides to the purpose behind it and must be construed according to their usual, ordinary, or customary meaning. R.C. 1.42; State v. Cravens, supra at 73; see, also, John Ken Alzheimer's Ctr. v. Ohio Cert. of Need Review Bd. (1989),65 Ohio App.3d 134. Webster's New Collegiate Dictionary (1976) defines the word obtain as a verb meaning to gain or attain usu[ally] by planned action or effort. (Emphasis added.) Thus, by its terms, it is an active verb rather than a passive one.
The foregoing definition is the appropriate one to apply since it is used in other provisions in the same chapter. An applicant initiates the process: he obtains an application. The applicant also presents appellant with the required information. Appellant, therefore, first simply receives the foregoing materials. Appellant, thereafter, may scrutinize the applicant's business records as a part of its statutory duty to insure the applicant has provided the necessary information.
Pursuant to this analysis, and the placement of R.C. 1322.06(C) in the statutory scheme, this court concludes the subsection provides immunity to only those documents with regard to which appellant, rather than the applicant, has taken action. Merely receiving the application materials in the first instance does not meet that requirement; however, any activities taken thereafter with regard to those materials by appellant are protected by a statutory privilege of confidentiality. See, e.g., State ex rel. Wallace v. State Medical Board (2000), 89 Ohio St.3d 431. Clearly, had the legislature intended to extend confidentiality to information either maintained or received by appellant, it easily could have used those words.
The trial court, therefore, correctly fashioned its order permitting appellee access to only those documents that reflected actions in the certification process taken by plaintiff in the underlying case.[3]
Appellant's assignment of error, accordingly, is overruled.
The trial court's order is affirmed.
It is ordered that plaintiff and appellees recover of appellant their costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
JUDGMENT ONLY
TIMOTHY E. McMONAGLE, P.J. CONCURS JAMES D. SWEENEY, J. CONCURS IN
[1] The record reflects this action previously had been voluntarily dismissed by the plaintiff but subsequently was refiled shortly thereafter.
[2] In making this argument, appellee conceded that its requests for appellant's investigatory files [were] hereby withdrawn.
[3] In so stating, it becomes unnecessary to address appellee's additional argument that the applications received by appellant are public records pursuant to R.C. 149.43. However, in view of the language of R.C. 143.011(G) and the supreme court's decision in State ex rel. McCleary v. Roberts (2000), 88 Ohio St.3d 365, this court would be disinclined to agree with appellee. Moreover, appellee would have chosen the wrong remedy to pursue. R.C. 149.43(C).